UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,                    )
                                             )
          Plaintiff,                         )        No. 6:11-CR-16-GFVT-HAI-2
                                             )
v.                                           )        RECOMMENDED DISPOSITION
                                             )
BRANDON SMITH,                               )
                                             )
          Defendant.                         )
                                             )

                         ***   ***   ***   ***

     The Court, on referral (D.E. 230), considers reported violations of supervised release

conditions by Defendant Brandon Smith.   District Judge Van Tatenhove entered a judgment

against Defendant on January 23, 2012, for aiding and abetting his co-defendants (and vice

versa) to willfully and knowingly steal and purloin various property belonging to the United

States Department of Agriculture Forest Service ("USDAFS"), the total value of which exceeded

$1,000.00, and for aiding and abetting his co-defendants (and vice versa) to willfully injure and

commit a depredation against property of the USDAFS.   D.E. 118.   The Judgment included 21

months of imprisonment on each count, to run concurrently, and a three-year term of supervised

release to follow on each count, also to run concurrently.   *Id.* at 3–4.   Defendant's term of

supervised release began on July 3, 2013.

     On June 10, 2014, the United States Probation Office ("USPO") issued a Supervised

Release Violation report ("the Report") charging Defendant with two violations, and then

secured a warrant from District Judge Van Tatenhove on June 11, 2014.   The Report alleges that

Defendant violated Standard Condition # 7, which states that "[t]he defendant shall refrain from

excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." It further alleges that Defendant violated the condition of his supervised release that states "[t]he defendant shall not commit another federal, state or local crime."

Specifically, the Report states that, on May 30, 2014,[1] Defendant submitted a urine specimen that tested positively for the presence of opiates and marijuana. Defendant initially denied using either substance, though he admitted to the use of marijuana following further questioning. However, he continued to deny use of any other controlled substance and the sample was sent to Alere Laboratory for further testing. On June 5, 2014, part of the lab test was returned indicating a positive result for marijuana. On June 6, 2014, the remainder of the lab test was returned indicating a positive result for oxymorphone, which is an opiate metabolite. The Report reasons that, given Defendant's prior conviction for a felony drug offense, as marijuana is a Schedule I Controlled Substance and oxymorphone is a Schedule II Controlled Substance, pursuant to Sixth Circuit case law holding that the use of a controlled substance is the equivalent of possessing the controlled substance, possession of each drug constitutes a violation of 21 U.S.C. § 844(a), a Class E felony.

The Court conducted an initial appearance pursuant to Rule 32.1 on June 24, 2014, and set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. D.E. 229. At that time, the United States made an oral motion for interim detention, to which Defendant did not object. *Id.* Based on the heavy burden on Defendant under 18 U.S.C § 3143(a), the Court found that detention was required. *Id.*

---

[1] While the Report relates that the events leading to the Report occurred on May 23, 2014, the USPO has alerted the Court that the date given is a typing error, and that the events actually occurred on May 30, 2014.

At the final hearing on July 1, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 235. At the outset of the hearing, Defendant stipulated to both violations, but no agreed sentencing recommendation had been reached between the United States and Defendant. Defendant admitted the factual basis for both violations, as described in the Report. *Id.* In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established both violations under the standard of 18 U.S.C. § 3583(e). The Court then called USP Officers Scott Greiwe and Deana Kincer to testify. Officer Greiwe previously supervised Defendant and Officer Kincer is Defendant's current supervising officer. They testified about their interactions with Defendant while he has been on supervised release, particularly regarding his attitude and behavior toward them during specific home visits. Both officers testified that, when faced with the possibility of laboratory testing to confirm or deny field drug test results, Defendant became so agitated that the officers had concerns for their own safety. Additionally, Officer Kincer testified that on May 30, 2014, Defendant challenged her to "lab it" several times, meaning to send his urine specimen to the laboratory. Defendant argued for revocation, a term of incarceration of 30 days, and reimposition of supervised release at the Court's discretion. The United States argued for revocation, a term of eight months of imprisonment, and reimposition of 28 months of supervised release, with the added condition that Defendant participate in substance abuse treatment at the discretion of the USPO.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, the underlying Judgment in this matter, and Defendant's pre-sentence investigation report. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the 18 U.S.C. § 3583(e) analysis. Under 18 U.S.C. § 3583(e)(3), a

defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 18 U.S.C. §§ 2, 641, and 1361 are Class C felonies. *See* 18 U.S.C. § 2, 18 U.S.C. § 641, 18 U.S.C. § 1361, 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under U.S. Sentencing Guidelines Manual § 7B1.1, Defendant's admitted conduct qualifies as a Grade C violation with respect to the first violation and a Grade B violation with respect to the second violation. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade B violation, *see* U.S. Sentencing Guidelines Manual § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is 8–14 months. Both parties agreed to this calculation of the range.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with

possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1). *See United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

The Court has considered all of the 18 U.S.C. § 3553 factors imported into the 18 U.S.C. § 3583(e) analysis, and finds that imprisonment of eight months is appropriate based upon those factors. The Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S. Sentencing Guidelines Manual 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").

The nature and circumstances surrounding Defendant's original offense are not a driving factor in the Court's analysis because the violative conduct is not directly related to the previous criminal behavior. However, Defendant's pre-sentence investigation report reflects that during the time frame of the underlying conduct, Defendant acknowledged that he had purchased

opiates from a co-defendant, and that he struggled with opiate abuse. This struggle continues as evidenced by the current violations.

Defendant's history and characteristics have seemingly contradictory elements that create a degree of tension in the Court's analysis. On the one hand, Defendant is a hard worker who has made a concerted effort to stay employed and to provide for his family. On the other hand, Defendant has a significant criminal history that correlates strongly to his use of marijuana, which serious criminal history the Court cannot simply overlook. Similarly, according to Officer Greiwe's testimony, Defendant was forthcoming with Officer Greiwe on September 9, 2013, when he volunteered that he believed he might have taken a Tylenol 3, which would have constituted a violation of his conditions of release. On the other hand, Defendant became agitated and loud with both USP Officers who have supervised him, causing them concerns for their safety, and he exhibited a poor and disrespectful attitude to Officer Kincer on May 30, 2014, when he challenged her to "lab it."

Uncontradicted, however, is that Defendant keeps returning to dangerous substance abuse. On September 9, 2013, Officer Greiwe required Defendant to submit a urine specimen after his admission that he took a medication not prescribed to him, and further explained the condition of Defendant's release which dictates he may not do so, specifying that he may not take another person's medication. Instead of learning from the experience, Defendant repeated the behavior, which led to the positive test on May 30, 2014. This is an example of the fact that throughout this matter, Defendant has failed to learn the lessons the Court and the USPO have tried to teach him.

The need to deter criminal conduct and protect the public is a significant factor in the Court's analysis. Defendant has a history of substance abuse and a propensity to engage in

criminal behavior when he is using. Use of any illicit substance is dangerous to both Defendant and the public, not only because of Defendant's behavior while using, but also because of the danger caused by trafficking and distribution of illicit drugs in the community. Defendant is also a danger to his children and other loved ones when he is using. Incarcerating Defendant will deter his criminal conduct and protect the public from the danger caused by his drug use, at least for a time, and will hopefully provide incentive for Defendant to comply with his conditions of release in the future.

The need to provide Defendant with education, training, or treatment is present in this case. Defendant's pre-sentence investigation report states that he has acknowledged that he has a substance abuse problem. While at the final revocation hearing Defendant merely stated (through counsel) that he "did not object" to substance abuse treatment, the Court is hopeful that during the eight months he is incarcerated, Defendant will have the opportunity to think about substance abuse treatment and approach it eagerly rather than with indifference.

The Court must also consider the need to avoid unwarranted disparities in sentencing among similarly situated Defendants. Defendant's argument for his recommended sentence of one month of incarceration was based on the fact that co-Defendant Roger Woolum received that sentence upon his first revocation, which occurred only one month after his release from custody, whereas Defendant was more or less successful on supervised release for nearly a year. Defendant and Woolum are not similarly situated, however. Defendant's belligerent attitude and agitated behavior, which created safety concerns, distinguish his case and behavior. Additionally, Woolum's first revocation involved the use of Suboxone, which the Court views as a less dangerous substance than marijuana or opiates. Defendant is therefore not similarly situated to Woolum. The need to avoid unwarranted sentencing disparities in this case is

otherwise addressed by recommendation of a sentence within Defendant's U.S. Sentencing Guidelines range.

The final factor, and a significant one in this case, is the breach of trust committed by Defendant. The nature of supervised release includes trust placed in Defendant to adhere to the conditions of his release. While Defendant did fairly well on supervised release for nearly a year, the fact that Defendant has not yet learned the lessons the Court has sought to impart is troubling. Defendant admitted to taking a medication not prescribed to him, was reminded of the condition of his supervised release that he may not do so by Officer Greiwe, and eight months later repeated the behavior. In addition, while Defendant was forthcoming with Officer Greiwe on September 9, 2013, Defendant lied to USP Officer Kincer on May 30, 2014 about his marijuana use initially and persisted in his denial of the use of opiates. The Court finds that revocation and a term of incarceration of eights months followed by 28 months of supervised release with the added condition that Defendant participate in substance abuse treatment at the discretion of the USPO will adequately address the seriousness of Defendant's conduct, and is sufficient, but not greater than necessary, to satisfy the purposes imported from section 3553(a) at this stage.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Defendant's convictions under 18 U.S.C. §§ 2, 621, and 1361 carried a maximum supervised release term of three years. Under section 3583(h), the

maximum at this point is therefore three years "less any term of imprisonment . . . imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). If this Recommended Disposition is adopted by District Judge Van Tatenhove, Defendant will serve eight months of incarceration, yielding a post-revocation cap of 28 months. The Court recommends that a term of 28 months of supervised release be imposed following revocation because Defendant is clearly in need of close supervision, particularly drug testing. The Court is also hopeful that Defendant's term of incarceration will encourage him to take the conditions of his supervised release seriously, and that he will be more respectful to court personnel upon reimposition of supervised release.

Based on the foregoing, the Court **RECOMMENDS** revocation and imprisonment for a term of eight months based on the violations found, followed by 28 months of supervised release with the added condition that Defendant be evaluated upon his release for participation in substance abuse treatment at the discretion of the USPO.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

This the 7th day of July, 2014.



Signed By:

*Hanly A. Ingram*

United States Magistrate Judge